IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
OCT 17 2018
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. SA-17-CR-8??-FB |
| Plaintiff, | SUPERSEDING INDICTMENT |
| v. | [Vio.: 18 U.S.C. § 1343, Wire Fraud: |
| JUSTIN SCOTT PEREZ-GORDA (1), and JOSEPHINE CASANDRA PEREZ-GORDA (2), | 18 U.S.C. §1347, Health Care Fraud: 18 U.S.C. §1035, False Statements Relating to a Health Care Matter: 18 U.S.C. §1349, Conspiracy to Commit Health Care Fraud; |
| Defendants. | 18 U.S.C. §2, Aiding and Abetting 18 U.S.C. §641, Theft of Government Funds] |

## INTRODUCTION

At all times material to this indictment:

1. The United States Department of Veterans Affairs Disability Compensation Program provides monthly payments to veterans in recognition of the effects of disabilities, diseases, or injuries incurred or aggravated during active military service and provides access to medical benefits, items and services to qualified participants.

2. The Veterans Affairs Disability Compensation Program is a health care benefit program within the meaning of Title 18, United States Code, Section 24(b).

3. Participants in the Veterans Affairs Disability Compensation program receive medical examinations and rehabilitative services at Veterans Affairs facilities. Health care providers at these facilities rely on accurate and truthful reports from participants to determine a course of treatment and to confirm eligibility for various aspects of the health care services provided by the Veterans Administration.

4. Pursuant to 38 Code of Federal Regulations, Section 71.40, a Primary Family Caregiver can receive a financial stipend based on the eligible veteran's level of dependency based

on the degree to which the eligible veteran is unable to perform one or more activities of daily living (ADLs). Greater dependence results in a larger stipend.

5. 38 Code of Federal Regulations, Section 17.156, authorizes the payment for automobile adaptive equipment for veterans who are entitled to receive compensation for the loss or permanent loss of use of one or both feet if the disability is a result of injury incurred or disease contracted in or aggravated by active military, naval or air service.

6. 38 Code of Federal Regulations, Part 36, Subpart C, authorizes monetary grant payments to qualified veterans to assist in acquiring suitable housing with special fixtures or movable facilities made necessary by the nature of the veterans disabilities. To qualify a veteran must have experienced a significant loss of mobility, for example: due to the loss or loss of use of one or more lower extremities which so affects the functions of balance or propulsion as to preclude ambulating without the aid of braces, crutches, canes, or a wheelchair

7. When the VA grants benefits to Veterans, the last step in the process is claims authorization. Claims authorization is performed by trained personnel assigned to VA Regional Offices across the Nation and is either performed in a VA Regional Office, or from an authorized telework location. When authorizing claims, VA staff use one of two programs, VBMS-Awards (VBMS-A) or VETSNET-Awards, to review the evidence, check for quality and complete the claim. When a claim is authorized in VBMS-A, the data is transmitted from the end-users computer to a cloud data storage in Culpepper, Virginia. From there the data is transmitted to the VA's "Corporate Database" (CDB) in Austin, Texas. When a claim is authorized in VETSNET-Awards, the data is transmitted directly to the CDB. Once the data is received in the CDB, monthly payments are transmitted from the CDB in Austin, Texas, to the Benefits Delivery Network (BDN) in Chicago, Illinois, and then retransmitted to the United States Treasury system in Kansas

City, Missouri. From Kansas City, Missouri, payments are transmitted by paper or by electronic deposit to Veterans banks or residences. In the case of **JUSTIN SCOTT PEREZ-GORDA,** during the period from 2013 through 2017, his payments were electronically transferred from Kansas City, Missouri, to his personal account at USAA Federal Savings Bank in San Antonio, Texas.

8. The Social Security Administration ("SSA") is an agency of the United States within the United States Government which administered programs under the Social Security Act, Title 42, United States Code, Section 301, et seq. ("the Act"). These programs included Social Security Old-Age, Survivors, and Disability Insurance and related programs under Title II of the Act ("Title II Programs").

9. The Title II Programs included the Disability Insurance Benefits Program, ("DIB") which paid monthly cash benefits to individuals who had been found by SSA to be medically "disabled" as that term is defined under the Act. Recipients of Disability Insurance Benefits were required to certify any changes in their medical or employment status to SSA, including any work activity, whether compensated or not. Eligibility for Disability Insurance Benefits was conditioned on the recipient's lack of income during the period when Disability Insurance Benefits were paid. To receive Disability Insurance Benefits, SSA must have determined that an individual's medical disability prohibited him or her from working at a substantial gainful activity level.

10. Spouses and minor dependent children of the disabled wage earner may also be entitled to auxiliary benefits on the disabled person's Social Security record. Usually their benefits will become effective the same month as the wage earners. Monthly benefits payable (MBP) for each beneficiary is determined by the wage earner's FICA taxed wages over the years, whether the wage earner is alive or deceased. Monthly benefits cannot exceed a family maximum amount.

11. When the SSA distributes benefit payments the process begins in Baltimore, Maryland. The SSA will create and certify the payment file. The payment file will then be transmitted to the U.S. Treasury data processing site located in Kansas City Missouri. From Kansas City, Missouri, payments are transmitted by electronic deposit to the beneficiary's bank account. In the case of **JUSTIN SCOTT PEREZ-GORDA**, during the period from 2012 to 2018, his payments were electronically transferred from Kansas City, Missouri, to his personal account at USAA Federal Savings Bank in San Antonio, Texas.

## THE SCHEME TO DEFRAUD THE VETERANS ADMINISTRATION

Beginning on or about October 5, 2011, and continuing until August 30, 2017, **JUSTIN SCOTT PEREZ-GORDA (1), and JOSEPHINE CASANDRA PEREZ-GORDA(2),,** devised a scheme and artifice to defraud the Veterans Affairs Disability Compensation Program by overstating the severity and extent of **JUSTIN SCOTT PEREZ-GORDA's** disability.

1. It was part of the scheme that **JUSTIN SCOTT PEREZ-GORDA (1), and JOSEPHINE CASANDRA PEREZ-GORDA(2)** falsely represented to physicians and other officials of the Veterans Affairs Disability Compensation Program that **JUSTIN SCOTT PEREZ-GORDA's** injuries had significantly reduced his mobility as well as his ability to perform basic tasks for personal maintenance. As a result of these false claims, the Veterans Affairs Disability Compensation Program granted **JUSTIN SCOTT PEREZ-GORDA** additional monthly disability compensation and granted **JOSEPHINE CASANDRA PEREZ-GORDA** a stipend pursuant to the Caregiver Support Program.

2. On November 10, 2011, **JUSTIN SCOTT PEREZ-GORDA** falsely reported to a physician that his wife assisted him with 90% of Activities of Daily Living (ADL), such as bathing, dressing, showering, transferring, and feeding.

3. On November 15, 2011, **JUSTIN SCOTT PEREZ-GORDA** made an application for Automobile Adaptive Equipment (VA Form 21-4502), wherein he falsely claimed

permanent loss of use of both feet. His application was approved on January 20, 2012, and he certified receipt of the vehicle on January 26, 2012. On February 15, 2012, US Treasury Check # 4030 06574774 was issued in the amount of $18,900.00 payable to Gunn Chevrolet. It was deposited in Gunn Chevrolet's Bank of America account on February 17, 2012. **JUSTIN SCOTT PEREZ-GORDA** made a separate AAE application for personal reimbursement, also falsely claiming loss of use of both legs below the knee. As a result of that application, he was directly paid another $2,572.

4. On December 14, 2011, **JUSTIN SCOTT PEREZ-GORDA** submitted a VA/DOD Joint Disability Evaluation Board Claim (VA Form 21-0819) to VA. Among twenty conditions that he falsely listed on the form and signed were neurogenic bowel, neurogenic bladder, and bilateral foot drop.

5. On December 29, 2011, **JUSTIN SCOTT PEREZ-GORDA** made several false statements on his Compensation & Pension (C&P) Exam that resulted in his being rated for Traumatic Brain Injury (TBI), migraines, incontinence (neurogenic bowel & bladder), and loss of use of both feet.

6. During that December 2011 C&P examination, **JUSTIN SCOTT PEREZ-GORDA** falsely claimed zero muscle strength, despite showing normal muscle strength in February 2011, just one month after his injury. Also, despite reporting that he could drive in May 2011 and completing a driving test in September 2011, he falsely claimed zero ability to lift his feet in his December 2011 C&P Exam.

7. Despite June 2011, November 2015, and October 2016 urodynamics studies showing normal bowel and bladder, **JUSTIN SCOTT PEREZ-GORDA** falsely claimed during his December 2011 C&P Exam that he was incontinent and soiling himself.

8. As a result of materially false statements made during his December 2011 C&P Exam, VA made a rating decision on January 18, 2012 granting PEREZ-GORDA automobile and

adaptive equipment (AAE), specially adapted housing, and dependent's educational assistance. Also following from his December 2011 C&P Exam, VA made a rating decision on October 25, 2012, assigning 100% disability for loss of use of both feet (bilateral lower extremity paralysis, claimed as right knee strain and bilateral foot drop), 100% disability for neurogenic bowel, 70% disability for PTSD, 60% disability for neurogenic bladder, 50% disability for migraines, and finding entitlement for regular aid and attendance.

9. On January 22, 2013, **JOSEPHINE CASANDRA PEREZ-GORDA** told a program manager employed by the Veterans Administration in the Caregiver Support Office, that **JUSTIN SCOTT PEREZ-GORDA** had limited mobility, could not cook, could not dress himself, could not plan his daily activities, and had permanent loss of the use of both feet, all of which she knew to be false.

10. On March 11, 2013, **JUSTIN SCOTT PEREZ-GORDA** falsely told a physician that he walked around the home wearing braces and holding onto furniture and walls for support. He requested a cane to attempt walking around outside the home.

11. On April 10, 2013, during a physical therapy follow-up, **JUSTIN SCOTT PEREZ-GORDA and JOSEPHINE CASANDRA PEREZ-GORDA** falsely told a Physical Therapist that he could no longer walk, and that he had not been walking since February 2013. The level of strength that he falsely displayed during the exam was so insufficient that no cane was issued for safety reasons.

12. On September 3, 2015, during an annual exam, **JUSTIN SCOTT PEREZ-GORDA** refused to be seen by a Physician's Assistant during his exam. During a strength test he intentionally and falsely underperformed and exerted insufficient handgrip strength to hold a steering wheel, yet he told a physician that he drove himself. The physician also noted that **JOSEPHINE CASANDRA PEREZ-GORDA** had played a consistent role in

answering for her husband and coaching his answers in the room with him during exams to amplify the perceived extent of his injuries.

13. During medical visits in 2014 and 2015, **JUSTIN SCOTT PEREZ-GORDA** falsely told a Veterans Affairs Physician's Assistant that he never walked.

14. On October 6, 2015, **JOSEPHINE CASANDRA PEREZ-GORDA** falsely told a nurse in VA's Caregiver Support Program that her husband could walk 70 feet at most.

15. On November 16, 2015, **JUSTIN SCOTT PEREZ-GORDA** falsely told a physician that the farthest he could walk unassisted was 50 feet by holding onto objects.

16. On November 16, 2015, **JOSEPHINE CASANDRA PEREZ-GORDA** falsely told a program manager employed by the Veterans Administration in the Caregiver Support Office, that **JUSTIN SCOTT PEREZ-GORDA** had limited mobility, could not use his feet, and had permanent loss of the use of both feet.

17. As a result of the scheme, from on or about October 5, 2011 until August 30, 2017, **JUSTIN SCOTT PEREZ-GORDA (1), and JOSEPHINE CASANDRA PEREZ-GORDA (2)** received payments from the Veterans Affairs Disability Compensation Program in the amount of $582,252.00.

**THE SCHEME TO DEFRAUD THE SOCIAL SECURITY ADMINISTRATION**

Beginning on or about December 20, 2011, and continuing until October 17, 2018, **JUSTIN SCOTT PEREZ-GORDA (1), and JOSEPHINE CASANDRA PEREZ-GORDA (2)**, devised a scheme and artifice to defraud the Social Security Administration, Title II, Disability Insurance Benefits (DIB) by overstating the severity and extent of **JUSTIN SCOTT PEREZ-GORDA's** disability.

1. It was part of the scheme that **JUSTIN SCOTT PEREZ-GORDA (1), and JOSEPHINE CASANDRA PEREZ-GORDA (2)** falsely represented to physicians and officials of the Social Security Administration that **JUSTIN SCOTT PEREZ-GORDA's** injuries led to

conditions that left him unable to work. As a result of these false claims, the Social Security Administration determined that **JUSTIN SCOTT PEREZ-GORDA** was entitled to DIB and granted Child Insurance Benefits to **JUSTIN SCOTT PEREZ-GORDA's** children based on **JUSTIN SCOTT PEREZ-GORDA's** disability determination.

2. On December 20, 2011 **JOSEPHINE CASANDRA PEREZ-GORDA** on behalf of **JUSTIN SCOTT PEREZ-GORDA** began the process of filing a claim for DIB. **JOSEPHINE CASANDRA PEREZ-GORDA** was unable to complete the application because she claimed that she did not know **JUSTIN SCOTT PEREZ-GORDA's** work history and due to his traumatic events, **JUSTIN SCOTT PEREZ-GORDA** did not remember.

3. On March 12, 2012, **JUSTIN SCOTT PEREZ-GORDA (1), and JOSEPHINE CASANDRA PEREZ-GORDA (2),** participated in a telephonic interview with SSA to complete the claim that began in December 20, 2011.

4. On March 19, 2012, **JOSEPHINE CASANDRA PEREZ-GORDA,** completed a Function Report-Adult-Third Party, Form SSA-3380-BK. On the form **JOSEPHINE CASANDRA PEREZ-GORDA,** falsely claimed that **JUSTIN SCOTT PEREZ-GORDA** could not hold his upper body weight on his legs. **JOSEPHINE CASANDRA PEREZ-GORDA** also falsely claimed that **JUSTIN SCOTT PEREZ-GORDA** could not squat, bend, stand, walk, kneel, stair climb. **JOSEPHINE CASANDRA PEREZ-GORDA,** also claimed that **JUSTIN SCOTT PEREZ-GORDA** has difficulty lifting, reaching, and sitting. **JOSEPHINE CASANDRA PEREZ-GORDA** claimed that **JUSTIN SCOTT PEREZ-GORDA** could not yet get in and out of the car by himself. **JOSEPHINE CASANDRA PEREZ-GORDA** also claimed that **JUSTIN SCOTT PEREZ-GORDA** cannot walk without crutches and he can only cover 10 to 20 feet.

5. On March 30, 2012, **JOSEPHINE CASANDRA PEREZ-GORDA** completed a Function Report- Adult, Form SSA-3373-BK, on behalf of **JUSTIN SCOTT PEREZ-GORDA**. In the form **JOSEPHINE CASANDRA PEREZ-GORDA** claimed on behalf of **JUSTIN SCOTT PEREZ-GORDA**, that **JUSTIN SCOTT PEREZ-GORDA** can drive but that **JUSTIN SCOTT PEREZ-GORDA** cannot go out alone because he is unable to get his chair or remember where he is going. When asked how far he can walk, **JOSEPHINE CASANDRA PEREZ-GORDA** falsely claimed on behalf of **JUSTIN SCOTT PEREZ-GORDA,** that **JUSTIN SCOTT PEREZ-GORDA** could not walk. **JOSEPHINE CASANDRA PEREZ-GORDA** also claimed on behalf of **JUSTIN SCOTT PEREZ-GORDA,** that **JUSTIN SCOTT PEREZ-GORDA** used crutches, a walker, a wheel chair, and some other orthopedic device to walk.

6. On May 15, 2012, SSA determined that **JUSTIN SCOTT PEREZ-GORDA** was entitled to monthly disability benefits beginning on July 2011. SSA also found that **JUSTIN SCOTT PEREZ-GORDA** became disabled under SSA rules on January 5, 2011. This determination was based on statements made by **JOSEPHINE CASANDRA PEREZ-GORDA**, both in her own capacity and on behalf of **JUSTIN SCOTT PEREZ-GORDA**, and medical examinations and records.

7. On May 31, 2012, an Application for Child's Insurance Benefits-Life Claim was filed on behalf of **JUSTIN SCOTT PEREZ-GORDA (1), and JOSEPHINE CASANDRA PEREZ-GORDA (2)'s**, children.

8. On June 5, 2012, SSA issued two Notices of Award to **JUSTIN SCOTT PEREZ-GORDA** on behalf of his two children. SSA determined that both children became eligible for auxiliary benefits beginning January 2012. SSA also determined that **JUSTIN SCOTT PEREZ-GORDA** would be designated the representative payee for both children. The

children's eligibility for benefits was based on **JUSTIN SCOTT PEREZ-GORDA's** eligibility for benefits.

9. After the disability determination was made by SSA, **JUSTIN SCOTT PEREZ-GORDA (1), and JOSEPHINE CASANDRA PEREZ-GORDA (2)** continued to make false claims and representations to the Veterans Administration. Those claims are referenced in the Scheme to Defraud the Veterans Administration paragraphs 1-17 above.

10. On March 14, 2017 SSA received SSA Form 827, Authorization to Disclose Information to SSA, from **JUSTIN SCOTT PEREZ-GORDA**. The form was completed and signed by **JUSTIN SCOTT PEREZ-GORDA** on February 19, 2017. The form allowed for SSA to request and receive medical records, regarding, **JUSTIN SCOTT PEREZ-GORDA** from, the Veterans Administration.

11. On April 17, 2017, **JOSEPHINE CASANDRA PEREZ-GORDA** completed a Function Report- Adult, Form SSA3373-BK, on **JUSTIN SCOTT PEREZ-GORDA's** behalf. **JOSEPHINE CASANDRA PEREZ-GORDA** falsely claimed that **JUSTIN SCOTT PEREZ-GORDA** cannot bend, stand for long periods of time, walk more than 70 to 80 feet, kneel, stair climb. **JOSEPHINE CASANDRA PEREZ-GORDA** also falsely claimed that **JUSTIN SCOTT PEREZ-GORDA** required on average 30 minutes to rest before he could resume walking.

12. As a result of the scheme perpetrated by **JUSTIN SCOTT PEREZ-GORDA (1), and JOSEPHINE CASANDRA PEREZ-GORDA (2)**, from on or about October 5, 2011 until October 17, 2018, **JUSTIN SCOTT PEREZ-GORDA,** both in his own capacity and on behalf of his two children, received payments from the Social Security Administration in the amount of $151,946.80 .

## COUNTS ONE THROUGH FOUR
### [18 U.S.C. § 1343 & 2]

Paragraphs 1 through 7 of the Introduction above and paragraphs 1 through 17 of the Scheme to Defraud set out above are re-alleged and incorporated by reference as though fully set out herein.

On or about the dates listed below as to each Count of the Indictment, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, the defendants

**JUSTIN SCOTT PEREZ-GORDA (1), and**
**JOSEPHINE CASANDRA PEREZ-GORDA(2),**

aided and abetted by each other, having devised the above described scheme or artifice to defraud and to obtain money from the Veterans Administration by means of materially false and fraudulent pretenses and representations, did for the purpose of executing such scheme or artifice, cause to be transmitted by wire and radio communications, in interstate and foreign commerce, writings, signs, pictures, signals and sounds, specifically instructions for electronic payment and electronic funds transfer in the amount listed as to each count from Texas to Illinois and then to Missouri and finally back to Texas:

| COUNT NO. | DATE | AMOUNT OF PAYMENT |
|---|---|---|
| ONE | 01/20/2016 | $7,581.92 |
| TWO | 02/18/2016 | $7,581.92 |
| THREE | 03/22/2016 | $7,581.92 |
| FOUR | 04/19/2016 | $7,581.92 |

all in violation of Title 18, United States Code, Section 1343.

## COUNT FIVE
[18 U.S.C. § 1341 & 2]

Paragraphs 1 through 7 of the Introduction above and paragraphs 1 through 17 of the Scheme to Defraud the Veterans Administration set out above are re-alleged and incorporated by reference as though fully set out herein.

On or about July 28, 2014, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, the defendants

**JUSTIN SCOTT PEREZ-GORDA (1), and
JOSEPHINE CASANDRA PEREZ-GORDA(2),**

aided and abetted by each other, having devised the above described scheme or artifice to defraud and to obtain money from the Veterans Administration by means of materially false and fraudulent pretenses and representations, did for the purpose of executing such scheme or artifice, cause to be sent and delivered by the United Parcel Service, also known as UPS, a commercial interstate carrier, a United States Treasury Check in the amount of $67,555.00 from the Veterans Administration in San Antonio, Texas, to Homes for Our Troops in Taunton, Massachusetts in violation of Title 18, United States Code, Section 1341 and 2.

## COUNT SIX
[18 U.S.C. § 1347]

Paragraphs 1 through 7 of the Introduction above and paragraphs 1 through 17 of the Scheme to Defraud the Veterans Administration set out above are re-alleged and incorporated by reference as though fully set out herein.

On or about January 22, 2013, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, defendant

**JOSEPHINE CASANDRA PEREZ-GORDA(2),**

knowingly and willfully executed and attempted to execute the above described scheme and artifice to defraud and to obtain money and property from the Veterans Affairs Disability

Compensation Program and Caregiver Support Program, as described above, by making materially false fictitious and fraudulent statements and representations to a program manager employed by the Veterans Administration at the South Texas Health Care System in San Antonio, Texas, in the Caregiver Support Office, in connection with the payment of health care benefits, items and services affecting interstate commerce, in violation of Title 18, United States Code, Section 1347.

## COUNT SEVEN
[18 U.S.C. § 1347]

Paragraphs 1 through 7 of the Introduction above and paragraphs 1 through 17 of the Scheme to Defraud the Veterans Administration set out above are re-alleged and incorporated by reference as though fully set out herein.

On or about November 16, 2015, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, defendant

**JUSTIN SCOTT PEREZ-GORDA (1),**

knowingly and willfully executed and attempted to execute the above described scheme and artifice to defraud and to obtain money and property from the Veterans Affairs Disability Compensation Program and Caregiver Support Program, as described above, by making materially false fictitious and fraudulent statements and representations to a physician employed by the Veterans Administration at the South Texas Health Care System in San Antonio, Texas, in connection with the payment of health care benefits, items and services affecting interstate commerce, in violation of Title 18, United States Code, Section 1347.

## COUNTS EIGHT THROUGH FOURTEEN
[18 U.S.C. § 1343 & 2]

Paragraphs 1 through 7 of the Introduction above and paragraphs 1 through 11 of the Scheme to Defraud the Social Security Administration set out above are re-alleged and incorporated by reference as though fully set out herein.

On or about the dates listed below as to each Count of the Indictment, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, the defendants

**JUSTIN SCOTT PEREZ-GORDA (1), and**
**JOSEPHINE CASANDRA PEREZ-GORDA(2),**

aided and abetted by each other, having devised the above described scheme or artifice to defraud and to obtain money from the Social Security Administration by means of materially false and fraudulent pretenses and representations, did for the purpose of executing such scheme or artifice, cause to be transmitted by wire and radio communications, in interstate and foreign commerce, writings, signs, pictures, signals and sounds, specifically instructions for electronic payment and electronic funds transfer in the amount listed as to each count from Missouri and to Texas:

| COUNT NO. | DATE | AMOUNT OF PAYMENT |
| --- | --- | --- |
| EIGHT | 06/27/2012 | $1,109.00 |
| NINE | 06/26/2013 | $1,128.00 |
| TEN | 06/25/2014 | $1,097.00 |
| ELEVEN | 06/24/2015 | $1,117.00 |
| TWELVE | 06/22/2016 | $1,117.00 |
| THIRTEEN | 06/22/2017 | $1,117.00 |
| FOURTEEN | 06/27/2018 | $1,117.00 |

all in violation of Title 18, United States Code, Section 1343.

## COUNT FIFTEEN
[18 U.S.C. § 1035]

Paragraphs 1 through 7 of the Introduction above and paragraphs 1 through 17 of the Scheme to Defraud the Veterans Administration set out above are re-alleged and incorporated by reference as though fully set out herein.

On or about January 22, 2013, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, defendant

**JOSEPHINE CASANDRA PEREZ-GORDA(2),**

did, in a matter involving a health care benefit program, knowingly and willfully make materially false fictitious and fraudulent statements and representations, to wit, she advised a program manager employed by the Veterans Administration at the South Texas Health Care System in San Antonio, Texas, in the Caregiver Support Office, that **JUSTIN SCOTT PEREZ-GORDA** had limited mobility, could not cook, could not dress himself, could not plan his daily activities, and had permanent loss of the use of both feet, said false statements being made in connection with the provision of health care benefits, items and services involving the Veterans Affairs Disabled Compensation Program and Caregiver Support Program, a health care benefits program as defined in Title 18, United States Code, Section 24(b), in violation of Title 18, United States Code, Section 1035.

## COUNT SIXTEEN
[18 U.S.C. § 1035 and 2]

Paragraphs 1 through 7 of the Introduction above and paragraphs 1 through 17 of the Scheme to Defraud the Veterans Administration set out above are re-alleged and incorporated by reference as though fully set out herein.

On or about April 10, 2013, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, defendants

**JUSTIN SCOTT PEREZ-GORDA (1), and
JOSEPHINE CASANDRA PEREZ-GORDA(2),**

aided and abetted by each other, did, in a matter involving a health care benefit program, knowingly and willfully make materially false fictitious and fraudulent statements and representations, to wit, he advised a physical therapist employed by the Veterans Administration at the South Texas Health Care System in San Antonio, Texas, that he had limited mobility and had not been walking in close to two months, said false statements being made in connection with the provision of health care benefits, items and services involving the Veterans Affairs Disabled

Compensation Program, a health care benefits program as defined in Title 18, United States Code, Section 24(b), in violation of Title 18, United States Code, Section 1035 and 2.

## COUNT SEVENTEEN
[18 U.S.C. § 1035]

Paragraphs 1 through 7 of the Introduction above and paragraphs 1 through 17 of the Scheme to Defraud the Veterans Administration set out above are re-alleged and incorporated by reference as though fully set out herein.

On or about November 16, 2015, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, defendant

**JUSTIN SCOTT PEREZ-GORDA (1),**

did, in a matter involving a health care benefit program, knowingly and willfully make materially false fictitious and fraudulent statements and representations, to wit, he advised a physician employed by the Veterans Administration at the South Texas Health Care System in San Antonio, Texas, that he had limited mobility and could only walk around his home while cruising or holding onto objects, said false statements being made in connection with the provision of health care benefits, items and services involving the Veterans Affairs Disabled Compensation Program and the Caregiver Support Program, a health care benefits program as defined in Title 18, United States Code, Section 24(b), in violation of Title 18, United States Code, Section 1035.

## COUNT EIGHTEEN
[18 U.S.C. § 1035]

Paragraphs 1 through 7 of the Introduction above and paragraphs 1 through 17 of the Scheme to Defraud the Veterans Administration set out above are re-alleged and incorporated by reference as though fully set out herein.

On or about November 16, 2015, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, defendant

**JOSEPHINE CASANDRA PEREZ-GORDA(2),**

did, in a matter involving a health care benefit program, knowingly and willfully make materially false fictitious and fraudulent statements and representations, to wit, she advised a program manager employed by the Veterans Administration at the South Texas Health Care System in San Antonio, Texas, in the Caregiver Support Office, that **JUSTIN SCOTT PEREZ-GORDA** had limited mobility, could not use his feet, and had permanent loss of the use of both feet, said false statements being made in connection with the provision of health care benefits, items and services involving the Veterans Affairs Disabled Compensation Program and Caregiver Support Program, a health care benefits program as defined in Title 18, United States Code, Section 24(b), in violation of Title 18, United States Code, Section 1035.

## COUNT NINETEEN
[18 U.S.C. § 1349]

Paragraphs 1 through 7 of the Introduction above and paragraphs 1 through 17 of the Scheme to Defraud the Veterans Administration set out above are re-alleged and incorporated by reference as though fully set out herein.

Beginning on or about October 5, 2011, and continuing until on or about August 30, 2017, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, defendants

**JUSTIN SCOTT PEREZ-GORDA (1), and**
**JOSEPHINE CASANDRA PEREZ-GORDA(2),**

did knowingly and willfully combine, conspire, confederate and agree together and with others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting interstate and foreign commerce, as defined in Title 18, United States code, Section 24(b), that is United States Department of Veterans Affairs Disability Compensation Program, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property

owned by and under the control of said health care benefit programs, in connection with the delivery of and payment for health care benefits, items and services.

## PURPOSE OF THE CONSPIRACY

It was the purpose and object of the conspiracy for the defendants and their coconspirators to unlawfully enrich themselves by, obtaining medical services and disability related compensation from the United States Department of Veterans Affairs and others for which they were not entitled or qualified.

## MANNER AND MEANS

The defendants sought to accomplish the object and purpose of their conspiracy by committing acts as specified in paragraph 1 through 17 of the Scheme to Defraud set out above.

## OVERT ACTS

In furtherance of the conspiracy, the defendants committed those acts specified and set out in Counts One through Seven and Fifteen through Eighteen above.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWENTY
[18 U.S.C. §§ 641 & 2]

Paragraphs 1 through 11 of the Introduction above and paragraphs 1 through 11 of the Scheme to Defraud the Social Security Administration set out above are re-alleged and incorporated by reference as though fully set out herein.

From on or about, December, 2011, through on or about October 17, 2017, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, defendants,

**JUSTIN SCOTT PEREZ-GORDA (1), and
JOSEPHINE CASANDRA PEREZ-GORDA(2),**

aided and abetted by each other willfully and knowingly did steal and purloin United States currency in an amount over $1,000.00, the property of the United States, in violation of Title 18, United States Code, §§ 641 and 2.

A TRUE BILL



Foreperson

JOHN F. BASH
UNITED STATES ATTORNEY

By: _____
GREGORY J. SUROVIC
Assistant United States Attorney